## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>QUALITY STORES, INC., et al.,<br><br>Debtors.<br><hr>FEDERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID C. BLISS, GARRY H. BROWN, JOHN W. CHILDS, RICHARD C. DRESDALE, ALAN L. FANSLER, JACK P. FEICHTNER, HABIB Y. GORGI, JOHN L. HILT, JERRY D. HORN, JAMES F. HURLEY, PETER LAMM, G. DEAN LONGNECKER, DAVID A. MADDOX, GREGORY A. MANN, WAYNE E. McCOLLUM, JAMES T. McKITRICK, THOMAS J. REINEBACH, CRAIG L. SCARBOROUGH, STEVEN G. SEGAL, DONALD O. SHILSTRA, JEFFREY STANTON, DENNY L. STARR, ADAM L. SUTTIN, JEFFREY SWARTZ, WILLIAM A. WAACK, and WILLIAM E. WATTS,<br><br>Defendants. | Chapter 11<br><br>Case No. GG-01-10662<br>(Jointly Administered)<br><br>Hon. James D. Gregg<br><br><br><br>Adversary Proceeding No.:_____ |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Federal Insurance Company ("Federal"), for its Adversary Complaint against the

above-named defendants, alleges as follows:

## NATURE OF THE ACTION

1.       Federal brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding its rights and obligations, if any, under Policy No. 8181-14-91B (the "Policy," attached as Ex. A) issued to Quality Stores, Inc. ("Quality Stores"), with respect to claims asserted by the "Chief Litigation Officer" of Quality Stores and its parent, QSI Holdings, Inc., on behalf of Quality Stores against 26 of its former directors and officers.  Quality Stores, Inc., *et al.* v. Bliss, et al., Adv. Pro. No. 03-88076 (Bankr. W. D. Mich.) (the "Quality Stores Adversary Proceeding," Amended Complaint attached as Ex. B).

2.       The Chief Litigation Officer, appointed as part of Quality Stores' Chapter 11 bankruptcy reorganization to pursue claims on behalf of Quality Stores, has alleged that these 26 Quality Stores' former officers and directors (who each are named as defendants here) committed negligence or gross negligence when they failed to develop and to implement a business plan for Quality Stores.  Quality Stores was created when Central Tractor Farm & Country Inc. and CT Holdings, Inc. (jointly, "Central Tractor") acquired the pre-merger Quality Stores, Inc. through a highly leveraged buyout.  The Chief Litigation Officer alleges that Quality Stores' liabilities post-merger far exceeded its assets as a result of the leveraged buyout, and that Quality Stores' inability to service this debt forced Quality Stores into bankruptcy.

3.       In this action, Federal seeks a judgment declaring that the Quality Stores Adversary Proceeding is "brought or maintained by or on behalf of" an "Insured" under the Policy and hence excluded by the Policy's "Insured versus Insured" Exclusion.  The Policy defines "Insured" to include, among others, Quality Stores, its subsidiaries and its duly elected or appointed officers; and the Quality Stores Adversary Proceeding was brought *by* an appointed officer of Quality Stores *on behalf of* Quality Stores.

4.      Federal also seeks a judgment declaring that the Quality Stores Adversary Proceeding is "based upon, arising from or in consequence of a public or private offering, solicitation, sale, distribution or issuance of securities," i.e., the leveraged buy-out of the pre-merger Quality Stores, Inc. and hence excluded by the Policy's "Public or Private Sale" Exclusion.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

6.      This is a non-core related proceeding pursuant to 28 U.S.C. § 157(c).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

9.      There is an actual, ripe and live controversy between the parties regarding their respective rights and obligations under the Policy for loss incurred by defendants in connection with the Quality Stores Adversary Proceeding.

## PARTIES

10.      Plaintiff Federal is a stock insurance company incorporated under the laws of Indiana with its principal place of business in Warren, New Jersey.

11.      Defendant David C. Bliss is an individual who, on information and belief, resides at 501 Ruddiman Drive, Muskegon, Michigan 49445 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

12.      Defendant Garry H. Brown is an individual who, on information and belief, resides at 7223 Walker Road, Spring Lake, Michigan 49456 and served as an officer of Quality Stores.

13.     Defendant John W. Childs is an individual who, on information and belief, resides at 421 Heath Street, Chestnut Hill, Massachusetts 02167 and was a member of Quality Stores' Board of Directors.

14.     Defendant Richard C. Dresdale is an individual who, on information and belief, resides at 29 Prescott Avenue, Bronxville, New York 10708 and was a member of Quality Stores' Board of Directors.

15.     Defendant Alan L. Fansler is an individual who, on information and belief, resides at 20 N. Bear Lake Road, Muskegon, Michigan 49445 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

16.     Defendant Jack P. Feichtner is an individual who, on information and belief, resides at 3440 San Dock Court, Muskegon, Michigan  49441 and served as an officer of Quality Stores.

17.     Defendant Habib Y. Gorgi is an individual who, on information and belief, resides at 95 Tamarack Drive, E. Greenwich, Rhode Island 02818 and was a member of Quality Stores' Board of Directors.

18.     Defendant John L. Hilt is an individual who, on information and belief, resides in Muskegon, Michigan and was a member of Quality Stores' Board of Directors.

19.     Defendant Jerry D. Horn is an individual who, on information and belief, resides at 49641 Avila Drive, LaQuinta, California 92253 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

20.     Defendant James F. Hurley is an individual who, on information and belief, resides at 2224 Norcrest Drive, Muskegon, Michigan 49441 and served as an officer of Quality Stores.

21.     Defendant Peter Lamm is an individual who, on information and belief, resides at 300 Central Park West, Apartment 14G, New York, New York 10024 and was a member of Quality Stores' Board of Directors.

22.     Defendant G. Dean Longnecker is an individual who, on information and belief, resides at 6822 Eagle Ridge Drive, Johnston, Louisiana 50131 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

23.     Defendant David A. Maddox is an individual who, on information and belief, resides at 550 Highway 155 South, McDonough, Georgia 30253 and served as an officer of Quality Stores.

24.     Defendant Gregory A. Mann is an individual who, on information and belief, resides at 7981 Twin Creek Terrace, West Chester, Ohio 45069-2274 and served as an officer of Quality Stores.

25.     Defendant Wayne E. McCollum is an individual who, on information and belief, resides at 100 Bear Lake Road, Muskegon, Michigan 49445 and served as an officer of Quality Stores.

26.     Defendant James T. McKitrick is an individual who, on information and belief, resides at 4801 Island Pine Court, #304, Bonita Springs, Florida 34134 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

27.     Defendant Thomas J. Reinebach is an individual who, on information and belief, resides in the State of New York and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

28.    Defendant Craig L. Scarborough is an individual who, on information and belief, resides at 5649 Wisperwood Boulevard, #403, Naples, Florida 34110 and served as an officer of Quality Stores.

29.    Defendant Steven G. Segal is an individual who, on information and belief, resides at 111 Huntington Avenue, Suite 2900, Boston, Massachusetts 02199-7610 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

30.    Defendant Donald O. Shilstra is an individual who, on information and belief, resides at 1452 Trent Wood SW, Wyoming, Michigan 49509 and served as an officer of Quality Stores.

31.    Defendant Jeffrey Stanton is an individual who, on information and belief, resides at 4115 John Lynde Road, Des Moines, Iowa 50312 and served as an officer of Quality Stores.

32.    Defendant Denny L. Starr is an individual who, on information and belief, served as an officer of Quality Stores.

33.    Defendant Adam L. Suttin is an individual who, on information and belief, resides at 47 Palmer Road, Waban, Massachusetts 02468 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

34.    Defendant Jeffrey Swartz is an individual who, on information and belief, resides in the State of New Hampshire and served as an officer of Quality Stores.

35.    Defendant William A. Waack is an individual who, on information and belief, resides at 17948 Wildwood Springs Parkway, Spring Lake, Michigan 49456-9241 and was a member of Quality Stores' Board of Directors and served as an officer of Quality Stores.

36.     Defendant William E. Watts is an individual who, on information and belief,

resides at 240 Academy Avenue, Sewickley, Pennsylvania 15143 and was a member of Quality

Stores' Board of Directors.

37.     On information and belief, the foregoing defendants are named and have appeared

as defendants in the Quality Stores Adversary Proceeding and, collectively, are referred to herein

as the "D&O Defendants."

## FACTUAL ALLEGATIONS

### The Policy

38.     Federal issued the Policy to Quality Stores and its subsidiaries for an original

policy period of May 24, 2000 to February 3, 2003.  *See* Executive Protection Policy

Declarations Item 2.  A true and correct copy of the Policy (including the application but not all

materials submitted therewith) is attached hereto as Exhibit A.

39.     After Quality Stores was placed into bankruptcy, it obtained an Extended

Reporting Period to the Policy, terminating the Policy as of May 13, 2002 and extending the

period of time to report claims until May 13, 2008.  *See* Executive Liability Endorsement No. 13.

40.     The Policy provides both Executive Liability and Indemnification Coverage and

Employment Liability Coverage.  Declarations Item 3.  Due to the nature of the underlying facts

and allegations, only the Executive Liability and Indemnification ("ELI") Coverage is potentially

implicated by the Quality Stores Adversary Proceeding.

41.     In the Policy, the term "Executive Liability and Indemnification" refers to two

different Insuring Clauses.  Insuring Clause 1, the "Executive Liability Coverage," provides that,

subject to all of the Policy's terms, conditions and exclusions:

> [Federal] shall pay on behalf of each of the **Insured Persons** all **Loss** for which
> the **Insured Person** *is not indemnified* by the **Insured Organization** and which

the **Insured Person** becomes legally obligated to pay on account of any **Claim**
first made against him, individually or otherwise, during the **Policy Period** or, if
exercised, during the Extended Reporting Period, for a **Wrongful Act** committed,
attempted, or allegedly committed or attempted by such **Insured Person** before or
during the **Policy Period**.

ELI Coverage ¶ 1 (bold terms defined in the Policy; italics added).  Insuring Clause 2, the

"Executive Indemnification Coverage," provides that subject to all of the Policy's terms,

conditions and exclusions:

> [Federal] shall pay on behalf of the **Insured Organization** all **Loss** for which the
> **Insured Organization** *grants indemnification* to each **Insured Person**, *as*
> *permitted or required by law*, which the **Insured Person** has become legally
> obligated to pay on account of any **Claim** first made against him, individually or
> otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting
> Period, for a **Wrongful Act** committed, attempted, or allegedly committed or
> attempted by such **Insured Person** before or during the **Policy Period**.

*Id.* ¶ 2 (italics added).

42.     The Policy defines **Insured Organization** as "Quality Stores, Inc. and [its]

subsidiaries," and **Insured Person** as "[a]ny person who has been, now is, or shall become a

duly elected director or a duly elected or appointed officer of the **Insured Organization**."  ELI

Coverage ¶ 18 and Declarations Items 5 & 6.  **Insured** means "in the singular or plural, . . . the

**Insured Organization** and any **Insured Person**."  ELI Coverage ¶ 18.

43.     The maximum Limit of Liability for all payments under the Policy during the

same **Policy Period** is $10 million, including **Defense Costs.**  *See* General Terms and Conditions

§ 3, as amended by General Terms Endorsement No. 1; ELI Coverage ¶ 11.  The Policy does not

impose on Federal a duty to defend the **Insureds.**  *See* ELI Coverage ¶ 11.

44.     The Policy contains a deductible of $100,000 for the Executive Indemnification

Coverage in Insuring Clause 2, but no deductible for the Executive Liability Coverage in

Insuring Clause 1.  *See id.* Declarations Item 4.  In a separate provision, ELI Coverage ¶ 9,

entitled "Presumptive Indemnification," the Policy makes the application of this $100,000

deductible depend upon the financial condition of the **Insured Organization**, Quality Stores and

its subsidiaries.  This Presumptive Indemnification provision specifies in relevant part that:

> If the **Insured Organization**
>
> > (a) fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Person** for **Loss**; and
> >
> > (b) is permitted or required to indemnify the **Insured Person** for such **Loss** pursuant to:
> >
> > > (i) the by-laws or certificate of incorporation of the **Insured Organization** in effect at the inception of this coverage section, or
> > >
> > > (ii) any subsequently amended or superseding by-laws or certificate of incorporation of the **Insured Organization** provided however, that such amended or superseding by-laws or certificate of incorporation expand or broaden, and do not restrict or in any way limit, the **Insured Organization's** ability to indemnity the **Insured Person**;
>
> then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by [Federal] of such **Loss** shall be subject to (i) the Insuring Clause 2 Deductible Amount [of $100,000] … .
>
> For purposes of this Subsection 9, the shareholder and board of director resolutions of the **Insured Organization** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by such by-laws or certificate of incorporation.

ELI Coverage ¶ 9.

45.     ELI Coverage ¶ 18 defines the "**Financial Impairment**" under which the

**Insured Organization** will not be presumed to indemnify **Insured Persons** as "the status of the

**Insured Organization** resulting from (i) the appointment by any state or federal official, agency

or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take

control of, supervise, manage or liquidate the Insured Organization, or (ii) *the Insured*

*Organization becoming a debtor in possession*" (emphasis added).  *See also* General Terms and

Conditions ¶ 8 ("[b]ankruptcy or insolvency of an **Insured** or of the estate of an **Insured** shall

not relieve [Federal] of its obligations nor deprive [Federal] of its rights" under the Policy).

46.     Regardless of whether coverage falls under Insuring Clause 1 (Liability) or

Insuring Clause 2 (Indemnification), however, ELI Coverage Exclusion 5(c) provides that

> [Federal] shall not be liable for **Loss** on account of any **Claim** made against any
> **Insured Person: …**

> (c)     brought or maintained by or on behalf of any **Insured** [the **Insured Organization** (Quality Stores and its subsidiaries) or any **Insured Person**] except:

>> (i)     a **Claim** that is a derivative action brought or maintained on behalf of an **Insured Organization** by one or more persons who are not **Insured Persons** and who bring and maintain the **Claim** without the solicitation, assistance, or participation of an **Insured**;

>> (ii)     an **Employment Claim**;

>> (iii)     a **Claim** brought or maintained by or on behalf of an **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Policy;

>> (iv)     a **Claim** brought or maintained by an **Insured Person** for the actual or alleged wrongful termination of the **Insured Person**[.]

ELI Coverage ELI Endorsement  No. 11, at ¶ 2 (amending ¶ 5(c)) (the "Insured versus Insured"

Exclusion).

47.     The Policy also excludes from coverage any **Claim** "based upon, arising from, or

in consequence of a public or private offering, solicitation, sale, distribution or issuance of

securities, whether or not a prospectus has been issued."  ELI Endorsement No. 1 (the "Public or

Private Sale" Exclusion), adding ELI Coverage ¶ 5(g).

**The Quality Stores Adversary Proceeding**

48.     On or about October 20, 2001, an involuntary petition under Chapter 11 of the

United States Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*, was filed against Quality Stores in

the United States Bankruptcy Court for the Western District of Michigan in Case No. 01-10662-

jdg.  On November 1, 2001, Quality Stores answered the involuntary petition and consented to

the entry of an order for relief.  That same day, the remaining affiliated debtors of Quality Stores

filed their own Chapter 11 cases to be consolidated with Quality Stores' bankruptcy proceeding.

49.    Under the First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of

the United States Bankruptcy Code (filed March 12, 2002, hereinafter "Plan," attached as Ex. C),

a "Chief Litigation Officer" of Quality Stores was appointed "to prosecute Rights of Action *on*

*behalf of the Debtors* for the benefit of Holders of Allowed Unsecured Claims" (emphasis

added).  *Id.* at 3.  Quality Stores' Bankruptcy Plan defines the term "Debtor or Debtors in

Possession" to mean:

> QSI Holdings, Inc. (f/k/a CT Holdings, Inc.); Quality Stores, Inc.
> (f/k/a Central Tractor Farm & Country, Inc.); Country General,
> Inc.; F and C Holding, Inc.; FarmandCountry.com, LLC.; QSI
> Newco, Inc.; QSI Transportation, Inc.; Quality Farm & Fleet, Inc.;
> Quality Investments, Inc.; Quality Stores Services, Inc.; and Vision
> Transportation, Inc.

*Id.* at 4.

50.    The Order Confirming First Amended Joint Plan of Reorganization of the Debtors

Under Chapter 11 of the Bankruptcy Code ("Confirmation Order," filed May 3, 2002, attached

as Ex. D), § J, "Preservation of Rights of Action," also states that: "The Debtors, the Creditors

Committee and the Chief Litigation Officer shall retain all rights *on behalf of* the Debtors to

commence and pursue, as appropriate . . ." (emphasis added).

51.    Vested with this authority, Quality Stores, "by and through its Chief Litigation

Officer," filed the Quality Stores Adversary Proceeding on or about January 30, 2003.  Quality

Stores originally sued 42 of its former officers and/or directors, alleging that they breached

various duties and committed assorted wrongful acts while they were directors and officers of

Quality Stores.

52.     On or about December 5, 2003, the Chief Litigation Officer filed an Amended

Complaint (Ex. B hereto) against only the 26 D&O Defendants.

53.     The preamble to the Amended Complaint in the Quality Stores Adversary

Proceeding states that it is being prosecuted by Quality Stores and its parent "by their Chief

Litigation Officer."  According to the Amended Complaint, the Chief Litigation Officer was

appointed in order to "prosecute causes of action that could be brought *on behalf of* the Debtors

and creditors for the benefit of the Debtors' estates and creditors."  Am. Compl. ¶ 9 (emphasis

added).

54.     The Chief Litigation Officer claims that:

Quality Stores' demise was the direct result of financial difficulties that arose for
two primary reasons:  (1) the Company was insolvent, had been left with
unreasonably small capital and had incurred debts beyond its ability to pay as a
result of the leveraged buyout; and (2) the defendants, who were officers and
directors of Quality Stores between 1999 and 2001[,] made a series of grossly
negligent decisions in acting, or were negligent or grossly negligent in failing to
act—all of which caused severe cash flow problems for Quality Stores and
destroyed any chance the Company had of surviving post-merger.

Am. Compl. ¶ 3.  *See also id.* ¶ 67 (referring to an alleged "series of reckless, uninformed and

grossly negligent decisions that . . . ultimately led to the Company's demise," following the

merger by leveraged buy-out).

55.     According to the Amended Complaint:

Among the decisions made by the officers and directors that caused financial
problems for the Company were (i) the adoption of a business plan that failed to
provide for revenues sufficient to service debt; (ii) an inventory over-buy that
resulted from the Company's failure properly to integrate the computer systems of
the merged companies into a properly functioning computer system; (iii) the
institution of an imprudent accounts payable strategy; (iv) the disproportionate
allocation of inappropriate amounts of Company[] resources to advertisement and
promotional pricing; (v) an ill-advised launch of an internet retail site; and (vi) the

continued payment of "management fees" to companies affiliated with members of the Board of Directors that were not providing management services.

*Id.* ¶ 4.

56.     The Amended Complaint asserts six claims for relief: (1) Objection to Defendants' Proofs of Claims; (2) Breach of Fiduciary Duty by Directors; (3) Breach of Fiduciary Duties by Officers; (4) Negligent Inaction; (5) Corporate Waste; and (5) Attorneys' Fees and Costs.

57.     The defendants, through counsel, requested coverage under the Policy for the Quality Stores Adversary Proceeding.  Federal responded on May 9, 2003, indicating that it had "very serious concerns whether the Policy affords coverage for the Quality Stores Adversary Proceeding, which is being prosecuted by a Chief Litigation Officer 'on behalf of' Quality Stores against other **Insureds** under the Policy."  Nonetheless, Federal tentatively agreed to accept coverage subject to a full and complete reservation of Federal's rights under the Policy and at law, including the right to obtain a judicial declaration of those rights and/or to seek reimbursement in the event that the matter or any aspect of it turned out not to be covered.

## FIRST CAUSE OF ACTION

### Federal is Entitled to a Judgment Declaring the Absence of Coverage for the Quality Stores Adversary Proceeding Based on the Insured versus Insured Exclusion

58.     Federal repeats and incorporates by reference all the previous allegations.

59.     The Insured versus Insured Exclusion expressly precludes coverage for any **Claim** "brought or maintained by or on behalf of any **Insured**," with several exceptions not directly applicable here.  *See* ELI Endorsement 11, at ¶ 2 (amending ELI Coverage ¶ 5(c)).

60.     According to the Amended Complaint and the underlying bankruptcy documents, the Quality Stores Adversary Proceeding is being prosecuted by the Chief Litigation Officer of

Quality Stores and its subsidiaries "on behalf of" Quality Stores and its subsidiaries. Am. Compl. ¶ 9; Plan at 4; Confirmation Order § J.

61.    Quality Stores and its subsidiaries are **Insured Organizations** under the Policy. The Policy makes clear that Quality Stores remains the **Insured Organization** even after being placed into or filing for bankruptcy. *See* General Terms and Conditions § 8. *See also* ELI Coverage ¶ 18 (defining "**Financial Impairment**"). Indeed, *after* filing its Bankruptcy Plan, Quality Stores purchased the very extended reporting period coverage under which the D&O Defendants now are seeking payment of defense costs.

62.    Moreover, the Chief Litigation Officer is an **Insured Person** under the Policy, *i.e.*, "[a]ny person who has been, now is, or shall become . . . a duly elected or appointed officer of" Quality Stores. ELI Coverage Declarations Item 6 (emphasis added).

63.    Thus, the Quality Stores Adversary Proceeding is being "brought or maintained by or on behalf of " an **Insured** under the Policy.

64.    Accordingly, Federal is entitled to a declaration that the Insured versus Insured Exclusion precludes coverage under the Policy for the Quality Stores Adversary Proceeding, and, therefore, Federal is not required to continue to advance defense costs to the D&O Defendants in connection with the Quality Stores Adversary Proceeding or to make payments in respect of liability or settlement with respect to that proceeding.

## SECOND CAUSE OF ACTION

**Federal is Entitled to a Judgment Declaring the
Absence of Coverage for the Quality Stores Adversary
Proceeding Based on the Public or Private Sale Exclusion**

65.    Federal repeats and incorporates by reference all the previous allegations.

66.    The Public or Private Sale Exclusion expressly precludes coverage for any **Claim** "based upon, arising from, or in consequence of a public or private offering, solicitation, sale,

-14-

distribution or issuance of securities, whether or not a prospectus has been issued." ELI
Endorsement No. 1, adding ELI Coverage ¶ 5(g).

67.     The Quality Stores Adversary Proceeding is based upon, arising from or in
consequence of the sale of securities in connection with the leveraged buyout of Quality Stores.

68.     Accordingly, Federal is entitled to a declaration that the Public or Private Sale
Exclusion precludes coverage for the Quality Stores Adversary Proceeding, and, therefore,
Federal is not required to continue to advance defense costs to the D&O Defendants in
connection with the Quality Stores Adversary Proceeding or to make payments in respect of
liability or settlement with respect to that proceeding.

### THIRD CAUSE OF ACTION

**Federal is Entitled to Reimbursement of Defense Costs Advanced In
Connection With the Quality Stores Adversary Proceeding**

69.     Federal repeats and incorporates by reference all the previous allegations.

70.     Federal was not required to defend the D&O Defendants in connection with the
Quality Stores Adversary Proceeding, but nonetheless agreed to advance defense costs subject to
a full and complete reservation of all Federal's rights under the Policy and at law, including the
right subsequently to seek a judicial declaration of no coverage and to seek reimbursement of
defense costs.

71.     Accordingly, Federal is entitled to a money judgment for reimbursement of all
defense costs advanced to date, plus pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION

### Other Limitations to Coverage Apply/Continued Reservation of Rights

72.    Federal repeats and incorporates by reference all the previous allegations.

73.    In addition to the Insured versus Insured Exclusion and the Public or Private Sale Exclusion, other provisions of the Policy may apply to limit coverage for all or part of the allegations in the Quality Stores Adversary Proceeding.

74.    Coverage for the Quality Stores Adversary Proceeding may be barred, in whole or in part, to the extent that the **Wrongful Acts** committed or allegedly committed by the D&O Defendants occurred prior to the May 6, 1999 acquisition of Quality Stores by Central Tractor. *See* ELI Endorsement 10.

75.    Coverage for the Quality Stores Adversary Proceeding may be barred, in whole or in part, to the extent that any **Loss** on account of the **Claim** is "based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a judgment or other final adjudication adverse to the **Insured Person** establishes such deliberately fraudulent act or omission or willful violation." ELI Coverage ¶ 6(b).

76.    Coverage for the Quality Stores Adversary Proceeding may be barred, in whole or in part, to the extent that any **Loss** on account of the **Claim** "based upon, arising from, or in consequence of such **Insured Person** having gained any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled if a judgment or other final adjudication adverse to the **Insured Person** establishes such legality." ELI Endorsement No. 7 (amending ELI Coverage ¶ 6(c)).

77.    Federal has reserved and continues to reserves all rights it may have arising out of representations or understandings in the underwriting process, including the application,

financial statements or other materials Federal received, including the right to rescind the Policy on this basis.

78.     These and other Policy terms and conditions may operate to bar or to limit coverage under the Policy for the Quality Stores Adversary Proceeding, depending upon further development of the factual record.  By not specifically raising such terms, conditions, limitations or exclusions at this time, Federal does not intend to relinquish or to waive its rights under those provisions.  To the contrary, Federal continues to reserve its rights to assert any such additional terms, conditions, limitations or exclusions if and when appropriate.

WHEREFORE, Federal requests that the Court enter judgment in its favor as follows:

A.     a judicial declaration that Federal has no obligation to defend or to indemnify the D&O Defendants in connection with the Quality Stores Adversary Proceeding as a result of the Policy's Insured versus Insured Exclusion and/or the Public or Private Sale Exclusion, and therefore Federal is not required to continue to advance defense costs or to make payments in respect of liability or settlement in connection with the Quality Stores Adversary Proceeding;

B.     an order directing reimbursement to Federal of defense costs it advanced for the D&O Defendants in connection with the Quality Stores Adversary Proceeding, plus pre- and post-judgment interest;

C.     an award to Federal of all its costs and expenses incurred in this matter, including reasonable attorneys' fees; and

D.     such additional declaratory and other relief as shall be found to be appropriate in the circumstances.

Dated:  February 2, 2005                    Respectfully submitted,


                                     _____/s/Edith A. Landman_____
                                     Edith A. Landman (P29409)
                                     PLUNKETT & COONEY, P.C.
                                     Bridgewater Place
                                     333 Bridge N.W.
                                     Suite 530
                                     Grand Rapids, Michigan 49504
                                     (616) 752-4600 (phone)
                                     (616) 752-4607 (facsimile)



                                     _____/s/Merril Hirsh_____
                                     Merril Hirsh, *pro hac vice* pending
                                     Gabriela Richeimer, *pro hac vice* pending
                                     ROSS, DIXON & BELL, L.L.P.
                                     2001 K Street, N.W.
                                     Washington, D.C.  20006-1040
                                     (202) 662-2000 (phone)
                                     (202) 662-2190 (facsimile)

        *Counsel for Plaintiff Federal Insurance Company*

285158