**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>QUALITY STORES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. GG-01-10662<br>(Jointly Administered)<br><br>Hon. James D. Gregg |
| FEDERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID C. BLISS, *et al.*,<br><br>Defendants. | Adversary Proceeding No.: 05-80071 |

**PLAINTIFF FEDERAL INSURANCE COMPANY'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS AND TO DEFENDANT REINEBACH'S "MOTION TO DENY"**

**Table of Contents**


**Page**

Table of Authorities ..... iv

Introduction ..... 1

Factual Background ..... 3

I. THE POLICY ..... 3

A. The Executive Liability Coverage ..... 3

B. The Exclusions that Are the Focus of Defendants' Motions ..... 5

II. THE CHIEF LITIGATION OFFICER AND THE PURCHASE OF TAIL COVERAGE ON BEHALF OF QUALITY ..... 6

III. THE QUALITY ADVERSARY PROCEEDING ..... 7

IV. FEDERAL'S COVERAGE ACTION ..... 8

Argument ..... 9

I. DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED IF THERE IS ANY WAY THAT FEDERAL CAN PROVE ANY SET OF FACTS SUPPORTING ITS CLAIMS. ..... 9

II. THE COURT SHOULD DENY DEFENDANTS' DEMAND FOR A JUDGMENT THAT THE INSURED VS. INSURED EXCLUSION DOES NOT APPLY TO THE QUALITY ADVERSARY PROCEEDING.. ..... 10

A. Federal Properly Alleges that the CLO's Proceeding is Brought or Maintained on Behalf of an Insured. ..... 10

1. Both the Plan and the Complaint Say that the Quality Adversary Is Brought on Behalf of the Quality Debtors ..... 10

2. This Policy Says the Insured Organization is an Insured Organization Whether It is a Debtor or Run By a Trustee or Otherwise. ..... 11

B. An Action "On Behalf of" an Insured Does Not Cease To Be "On Behalf of an Insured" When It is Pursued "On Behalf of an Insured for the Benefit of Creditors." ..... 11

1. Defendants' argument contradicts what the Policy says ..... 11

**Table of Contents**
(continued)

**Page**

2. The Sixth Circuit (in *Javitch*) has rejected Defendants' argument that a party can fairly be said not to act "on behalf of" an insolvent corporation when the party acts "for the benefit of" the corporation's creditors. .......... 12

3. Defendants have no fair basis for distinguishing *Javitch* .......... 13

4. Defendants' assertion that the CLO acts for the benefit of creditors does not change the fact that the CLO has acted "on behalf of" Quality .......... 14

5. Defendants' argument would not be correct – even if it were not contrary to *Javitch* and the language of this Policy, the Plan and the Complaint .......... 15

6. The Insured vs. Insured Exclusion applies for the additional reason that the CLO is an officer of the company .......... 17

C. Defendants' Are Not Entitled – Especially on a Motion To Dismiss – To Limit the Insured vs. Insured Exclusion Beyond Its Text to "Non-Collusive Lawsuits." .......... 18

1. Assertions about the non-textual intent of a policy do not overrule its language. .......... 18

2. Defendants' assertion about the intent of the Insured vs. Insured Exclusion is not correct .......... 19

3. Even if the Insured vs. Insured Exclusion were limited to "collusive" lawsuits, the Quality Adversary Proceeding is "collusive" in the common sense of the term. .......... 19

4. In any event, Defendants are not entitled on a motion to dismiss to have their view of this exclusion's purpose treated as if it were a fact .......... 20

D. The Quality Adversary Proceeding is Not a Derivative Suit Being Pursued by Non-Insured Persons "Without the Solicitation, Assistance, or Participation of any Insured." .......... 21

1. The Quality Adversary Proceeding meets neither condition of this exception. .......... 21

**Table of Contents**
(continued)

**Page**


2. The fact that the exclusion contains an exception that the Quality Adversary Proceeding does not meet further undercuts Defendants' arguments. .......... 23

III. THE QUALITY ADVERSARY PROCEEDING IS ALSO EXCLUDED FROM COVERAGE BY THE SALE EXCLUSION. .......... 23

A. The Sale Exclusion Applies Broadly to Claims "Based upon, Arising from, or in Consequence of" a Sale of Securities .......... 24

B. The Quality Adversary Proceeding Says that it is Based Upon, Arises From and is in Consequence of Quality's LBO .......... 25

C. Applying the Sale Exclusion as it is Written Does Not Render Coverage Illusory .......... 26

IV. DEFENDANTS ARE NOT ENTITLED TO AN ADVANCE RULING THAT NO PROVISIONS OF THE POLICY BAR COVERAGE OR THAT DEFENSE COSTS ARE COVERED .......... 26

Conclusion .......... 27

**Table of Authorities**

**FEDERAL CASES**


*Ameriwood Industrial International Corp. v. America Casualty Co.*, 840 F. Supp. 1143 (W.D. Mich. 1993) .......... 24

*Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987) .......... 12

*Branch International Services, Inc. v. Budde*, 890 F. Supp. 659 (E.D. Mich. 1995), *aff'd*, 89 F.3d 832 (6th Cir. 1996) .......... 20

*In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000) .......... 13, 15, 16

*Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972) .......... 12

*Employers Insurance of Wausau v. Duplan*, 899 F. Supp. 1112 (S.D.N.Y. 1995) .......... 26

*Fausek v. White*, 965 F.2d 126 (6th Cir. 1992) .......... 14

*Federal Insurance Co. v. Raytheon Co.*, 426 F.3d 491 (1st Cir. 2005) .......... 26

*Fidelity & Deposit Co. v. Conner*, 973 F.2d 1236 (5th Cir. 1992) .......... 15

*Gary v. America Casualty Co.*, 753 F. Supp. 1547 (W.D. Okla. 1990) .......... 12, 15

*In re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir. 1986) .......... 17

*Goodman v. FCC*, 182 F.3d 987 (D.C. Cir. 1999) .......... 14

*In re Graham Square, Inc.*, 126 F.3d 823 (6th Cir. 1997) .......... 16

*Gregory v. Shelby County, Tenn.*, 220 F.3d 433 (6th Cir. 2000) .......... 9

**Table of Authorities**
(continued)

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.2d 1149 (3d Cir. 1989)....................14

*Hyde v. Fidelity & Deposit Co.*,
23 F. Supp. 2d 630 (D. Md. 1998)....................12, 18, 19

*Javitch v. First Union Securities, Inc.*,
315 F.3d 619 (6th Cir. 2003)....................2, 12, 13, 14, 15

*In re K-T Sandwich Shoppe of Akron*,
34 F.2d 962 (6th Cir. 1929)....................14

*Level 3 Communications, Inc. v. Federal Insurance Co.*,
168 F.3d 956 (7th Cir. 1999)....................18

*In re Light*,
23 B.R. 482 (Bankr. E.D. Mich. 1982)....................13

*Mt. Hawley Insurance Co. v. Federal Sav. & Loan Insurance Corp.*,
695 F. Supp. 469 (C.D. Cal. 1987)....................15, 19

*National Union Fire Insurance Co. v. Olympia Holding Corp.*,
No. 1:94-CV-2081-GET, 1996 WL 33415761 (N.D. Ga. June 4, 1996), *aff'd per curiam*, 148 F.3d 1070 (11th Cir. 1998)....................15

*National Union Fire Insurance Co. v. Resolution Trust Corp.*,
No. H-92-1157, 1992 WL 611463 (S.D. Tex. Aug. 12, 1992)....................12

*Parameter Driven Software, Inc. v. Massachusetts Bay Insurance Co.*,
25 F.3d 332 (6th Cir. 1994)....................26

*In re Pettibone Corp.*,
156 B.R. 220 (Bankr. N.D. Ill. 1993), *aff'd sub nom*, *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989 (N.D. Ill. 1994), *aff'd*, 40 F.3d 175 (7th Cir. 1994)....................20

*Powell v. America Casualty Co.*,
772 F. Supp. 1188 (W.D. Okla. 1991)....................15

*In re R.J. Reynolds - Patrick County Memorial Hospital, Inc.*,
315 B.R. 674 (W.D. Va. 2003)....................15, 16, 21, 22

*Reliance Insurance Co. of Ill. v. Weis*,
148 B.R. 575 (E.D. Mo. 1992), *aff'd in relevant part* 5 F.3d 532 (8th Cir. 1993), *cert. denied*, 510 U.S. 1117 (1994)....................12, 15

**Table of Authorities**
(continued)

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995), *cert. denied*, 516 U.S. 1028 (1995)....................................12, 14

*Sphinx International v. National Union Fire Insurance Co.*,
412 F.3d 1224 (11th Cir. 2005) ...........................................................................................17, 18

*Stratton v. National Union Fire. Insurance Co.*,
No. 03-CV-12018-RGS, 2004 U.S. Dist. LEXIS 17613 (D. Mass. Sept. 3, 2004)................18

**STATE CASES**

*AT&T Corp v. Clarendon American Insurance Co.*,
No. 04C-11-167 (JRJ), 2006 WL 1064172 (Del. Super. Ct. Apr. 13, 2006).....................10, 26

*Allstate Insurance Co. v. Tomaszewski*,
447 N.W.2d 849 (Mich. Ct. App. 1989)................................................................................12

*Automobile-Owners Insurance Co. v. Harrington*,
565 N.W.2d 839 (Mich. 1997)...........................................................................................9, 23

*Cirka v. National Union Fire Insurance, No. Civ. A.20250-NC*,
2004 WL 1813283 (Del. Ch. Aug. 6, 2004) ..........................................................................22

*Danis v. Great American Insurance Co.*,
823 N.E.2d 59 (Ohio Ct. App. 2004), appeal denied, 824 N.E.2d 541 (Ohio 2005)..............24

*Detroit Edison Co. v. Michigan Mutual Insurance Co.*,
301 N.W.2d 832 (Mich. Ct. App. 1981)................................................................................10

*Farm Bureau Mutual Insurance Co. of Michigan v. Nikkel*,
596 N.W.2d 915 (Mich. 1999)..................................................................................................9

*Howell v. Vito's Trucking & Excavating Co.*,
191 N.W.2d 313 (Mich. 1971)................................................................................................17

*McKusick v. Travelers Indemnity Co.*,
632 N.W.2d 525 (Mich. Ct. App. 2001)..........................................................................9, 18, 24

*Olson v. America Bankers Insurance Co.*,
35 Cal. Rptr. 2d 897 (Cal. Ct. App. 1994)...............................................................................24

*Production Resources Group L.L.C. v. NCT Group, Inc.*,
863 A.2d 772 (Del. Ch. 2004)...............................................................................................14, 22

## Introduction

Plaintiff Federal Insurance Company ("Federal") filed its declaratory judgment Complaint to obtain a determination principally regarding two exclusions in the Executive Protection Policy (the "Policy") issued to the Debtor, Quality Stores, Inc. ("Quality"): (1) an exclusion for claims brought by or on behalf of any Insured (the "Insured vs. Insured Exclusion"), and (2) an exclusion for claims based upon, arising from or in consequence of a public or private offering, solicitation, sale or distribution or issuance of securities (the "Sale Exclusion"). Federal's Complaint asserts that the underlying lawsuit by Quality and other Debtors against Defendants, former Quality officers and/or directors (the "Quality Adversary Proceeding"), triggers both exclusions.

Defendants responded to Federal's Complaint with motions asking the Court to declare, at the outset and as a matter of law, that neither of these exclusions (nor any other provisions potentially limiting coverage) could possibly apply to the Quality Adversary Proceeding. As discussed below, these motions overlook relevant Policy language and the circumstances, assume facts not alleged in the Complaint and urge legal rulings contrary to binding authority. Accordingly, the Court should reject Defendants' arguments to dismiss the Complaint.[1]

To understand Defendants' main argument on the Insured vs. Insured Exclusion, it is useful to examine a charge they make against Federal. Defendants begin the Joint Motion by accusing Federal of "seemingly inequitable conduct" that, they then say, "need not be addressed." R.35, at 2. According to Defendants, it is "seemingly inequitable" for Federal to

[1] On February 3, 2006, Defendant Thomas Reinebach filed a "*Pro Se* Answer and Motion to Deny" (R.32), which appears in essence to be a motion to dismiss. On March 13, 2006, all defendants except for Mr. Reinebach filed a Joint Motion to Dismiss ("Joint Motion," R.35). This brief addresses the arguments in both motions. As many of the arguments overlap, Federal will reference the Joint Motion except when arguments are unique to Mr. Reinebach's motion.

charge the Debtor "over $200,000" in premium for a six-year extended reporting period to the Policy (the "tail" coverage), and then to argue that the Debtor cannot collect the *$10 million* Policy limits for itself.

To make a charge of inequity that "need not be addressed" is obviously unfair. *See also* R. 35, at 17 (repeating the point that "need not be addressed"). But this charge is particularly so. Defendants' argument presupposes that the Debtors could make a remarkable investment at Federal's expense: a $10 million return for $200,000 is a 5,000 percent recovery. Defendants' theory for obtaining this large recovery is that debtors in bankruptcy (unlike the company beforehand) have the power to buy insurance not so much to protect directors and officers, but as a deep pocket to fund their own recovery for alleged director and officer defalcations.

Defendants' argument is contrary to the Policy language, the controlling case law and applicable public policy. The Policy excludes coverage for actions "brought or maintained by or on behalf of any Insured," including the "Insured Organization" – Quality and its subsidiaries. And the Policy expressly contemplates that "Insured Organization" remains an "Insured Organization" even when, as here, the "Insured Organization become[s] a Debtor-in-Possession," or there has been a "receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization." *See* R. 1 (Ex. A), Policy, Executive Liability and Indemnification ("ELI") Coverage, § 18.

Defendants do not mention this language about the Insured Organization or reconcile their argument with it. Instead, they select from among cases discussing different policy language. In the process, Defendants also argue for a logic that the Sixth Circuit rejected in *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003); they overlook other contrary

authority (including *all* the relevant appellate cases) and the actual facts of this case; and they ask the Court to declare an "intent" to the exclusion that is contrary to its unambiguous language.

Defendants are also incorrect in demanding a judgment that the Policy's "Sale Exclusion" does not preclude coverage. Based on the allegations in the Quality Adversary Proceeding, Defendants' alleged breaches of fiduciary duty, such as their alleged failure to adopt a proper business plan, are sufficiently related to the leveraged buy-out of the pre-merger Quality Stores, Inc. to trigger the Sales Exclusion.

Finally, Defendants demand that the Court should rule in advance to limit Federal's relief and dismiss claims under other provisions whose applicability cannot be determined until the underlying lawsuit is resolved. This too is improper.

Accordingly, Defendants' Motions to Dismiss should be denied.

## <u>Factual Background</u>

### I. <u>THE POLICY</u>

#### A. <u>The Executive Liability Coverage</u>

Federal issued Executive Protection Policy No. 8181-14-91 to Quality for an original policy period of May 24, 2000 to February 3, 2003. *See* R.1 (Ex. A), Policy, ELI Coverage, Declarations Item 2. The Policy defines "**Insured Organization**" (defined terms appear in bold) as "Quality Stores, Inc. and [its] subsidiaries," and "**Insured Person**" as "[a]ny person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the **Insured Organization**." ELI Coverage ¶ 18 and Declarations Items 5 & 6. "**Insured**" means "in the singular or plural, . . . the **Insured Organization** and any **Insured Person**." *Id.* ¶ 18.

As relevant here, the Policy provides Executive Liability and Indemnification Coverage, which refers to two different Insuring Clauses. Insuring Clause 1, the "Executive Liability Coverage," provides that, subject to all of the Policy's terms, conditions and exclusions:

> [Federal] shall pay on behalf of each of the **Insured Persons** all **Loss** for which the **Insured Person** *is not indemnified* by the **Insured Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**.

R.1 (Ex. A), Policy, ELI Coverage ¶ 1 (italics added).

Insuring Clause 2, the "Executive Indemnification Coverage," provides that subject to all of the Policy's terms, conditions and exclusions:

> [Federal] shall pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** *grants indemnification* to each **Insured Person**, *as permitted or required by law*, which the **Insured Person** has become legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**.

*Id.* ¶ 2 (italics added).

The maximum Limit of Liability for all payments under the Policy during the same Policy Period is $10 million, including Defense Costs. *See* R.1 (Ex. A), Policy, General Terms and Conditions § 3 and Endt. No. 1; *id.*, ELI Coverage ¶ 11. The Policy does not impose on Federal a duty to defend the Insureds. *See id.*, ELI Coverage ¶ 11.

The Policy contains a deductible of $100,000 for the Executive Indemnification Coverage in Insuring Clause 2, but no deductible for the Executive Liability Coverage in Insuring Clause 1. *See* R.1 (Ex. A), Policy, ELI Coverage Declarations Item 4. In a separate provision entitled "Presumptive Indemnification," *id.* ¶ 9, the Policy makes the application of this $100,000 deductible depend upon the financial condition of the Insured Organization. This Presumptive Indemnification provision specifies in relevant part:

> If the Insured Organization
>
> (a) fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Person** for **Loss**; and
>
> (b) is permitted or required to indemnify the **Insured Person** for such **Loss** pursuant to [specified by laws or certificate of incorporation] . . .
>
> then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by [Federal] of such **Loss** shall be subject to (i) the Insuring Clause 2 Deductible Amount [of $100,000] .... .
>
> For purposes of this Subsection 9, the shareholder and board of director resolutions of the **Insured Organization** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by such by-laws or certificate of incorporation.

*Id.*

The Policy defines the "Financial Impairment" under which the Insured Organization will not be presumed to indemnify Insured Persons as "the status of the **Insured Organization** resulting from (i) the appointment by any state or federal official, agency or court of *any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization*, or (ii) *the **Insured Organization** becoming a debtor in possession*" (emphasis added). R.1 (Ex. A), Policy, ELI Coverage ¶ 18.

Thus, the Policy expressly contemplates that an "Insured Organization" can "becom[e] a debtor in possession," or be a company that is under the control or supervision of "receiver, conservator, liquidator, trustee, rehabilitator or similar official." *Id.* In that circumstance, as here, no deductible is applied to a Claim against officers and directors that otherwise would be deemed indemnifiable and treated under Insuring Agreement 2.

### B. <u>The Exclusions that Are the Focus of Defendants' Motions</u>

The Insured vs. Insured Exclusion, ELI Coverage Exclusion 5(c), provides:

> [Federal] shall not be liable for **Loss** on account of any **Claim** made against any **Insured Person: ...**

(c) brought or maintained by or on behalf of any **Insured** [the **Insured Organization** (Quality and its subsidiaries) or any **Insured Person**] except:

(i) a **Claim** that is a derivative action brought or maintained on behalf of an **Insured Organization** by one or more persons who are not **Insured Persons** and who bring and maintain the **Claim** without the solicitation, assistance, or participation of an **Insured**;

(ii) an **Employment Claim**;

(iii) a **Claim** brought or maintained by or on behalf of an **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Policy;

(iv) a **Claim** brought or maintained by an **Insured Person** for the actual or alleged wrongful termination of the **Insured Person**[.]

R.1 (Ex. A), Policy, ELI Coverage, Endt. No. 11, ¶ 2 (amending ¶ 5(c)).

Under the Sale Exclusion, ELI Coverage Exclusion 5(g), there is no coverage for any Claim "based upon, arising from, or in consequence of a public or private offering, solicitation, sale, distribution or issuance of securities, whether or not a prospectus has been issued." *Id.* Endt. No. 1.

## II. THE CHIEF LITIGATION OFFICER AND THE PURCHASE OF TAIL COVERAGE ON BEHALF OF QUALITY.

On March 12, 2002, before the end of the original Policy period, Quality and the other Debtors filed their First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"). *See* R.1 (Ex. C). The Plan contemplated the appointment of a Chief Litigation Officer ("CLO") "to prosecute Rights of Action on behalf of the Debtors for the benefit of Holders of Allowed Unsecured Claims." *Id.* at 3, 17-18. *See also* No. 01-10662, R.1283, Confirmation Order, 18-20, § J, "Preservation of Rights of Action."

According to the Disclosure Statement for the Plan, as amended on April 2, 2002, the Debtors and/or CLO retained authority to pursue causes of action against "[f]ormer Directors,

Officers and/or Employees of the Debtors . . . with respect to misfeasance, malfeasance, breach of duty, negligence, misconduct, conflict of interest, usurpation of corporate opportunity [and] mismanagement." No. 01-10662, R.1124, Joint Motion of the Debtors and the Creditors Committee Authorizing a Supplemental Disclosure Under the Approved Disclosure Statement, dated April 2, 2002, ¶ 10 & Ex. A; *See also* No. 01-10662, R.1180, Motion for Order Authorizing the Debtors to Purchase Tail Coverage ¶ 11 ("The Debtors believe that the Chief Litigation Officer may bring chapter 5 causes of action against the directors and officers . . . .").

After the Debtors submitted the Plan, but before the Court confirmed it, they requested the Court's authorization to procure an extended reporting period or "tail" coverage on the Policy. *See* No. 01-10662, R.1180. *See also* R.1 (Ex. A), Policy, ELI Coverage, § 4 and Endt. No. 3 (providing that if Federal terminates or declines to renew, Quality may request extended reporting period). Quality offered two justifications for extending the coverage: (1) the insurance was "necessary in order for the Debtors to reduce their exposure for potential director and officer indemnification claims," and (2) "the availability of director and [officer] insurance coverage may increase the recovery for the [CLO]." No. 01-10662, R.1180, at ¶ 11.

On May 2, 2002, the Court granted the Debtors' Motion to Purchase Tail Coverage. See No. 01-10662, R.1282. As a result of this order, Quality obtained an extended reporting period of six years (until May 13, 2008) in which to report claims based on acts that took place before May 13, 2002. *See* R.1 (Ex. A), ELI Coverage, Endt. No. 13. One day later, on May 3, 2002, the Court approved the Plan. *See* No. 01-10662, R.1283, Confirmation Order.

## III. <u>THE QUALITY ADVERSARY PROCEEDING</u>

On January 30, 2003, the CLO sued dozens of Quality's former directors and officers in the Quality Adversary Proceeding, Case No. 03-88076. Quality's Amended Complaint reiterates the CLO's position that the CLO was appointed in order to "prosecute causes of action that could

be brought *on behalf of the* Debtors and creditors for the benefit of the Debtors' estates and creditors," R.1 (Ex. B), ¶ 9 (emphasis added), and that this particular complaint is being prosecuted by QSI Holdings, Inc. and Quality Stores, Inc. "by their Chief Litigation Officer." *Id.* Preamble, p.2.

In the Quality Amended Complaint, the CLO claims:

> Quality Stores' demise was the direct result of financial difficulties that arose for two primary reasons: (1) the Company was insolvent, had been left with unreasonably small capital and had incurred debts beyond its ability to pay as a result of the leveraged buyout; and (2) the defendants, who were officers and directors of Quality Stores between 1999 and 2001[,] made a series of grossly negligent decisions in acting, or were negligent or grossly negligent in failing to act – all of which caused severe cash flow problems for Quality Stores and destroyed any chance the Company had of surviving post-merger.

*Id.* ¶ 3. *See also id.* ¶ 67 (referring to an alleged "series of reckless, uninformed and grossly negligent decisions that … ultimately led to the Company's demise," following the merger by leveraged buy-out). The Quality Amended Complaint goes on to list six categories of purported conduct that caused financial problems for the newly combined company. *Id.* ¶ 4.

## IV. FEDERAL'S COVERAGE ACTION

The defendants in the Quality Adversary Proceeding, through counsel, requested coverage under the Policy. Federal responded on May 9, 2003, indicating that it had "very serious concerns whether the Policy affords coverage for the [Quality] Adversary Proceeding, which is being prosecuted by a Chief Litigation Officer 'on behalf of' Quality and QSI Holdings, Inc. against other Insureds under the Policy." R.1, ¶ 57. Nonetheless, Federal tentatively agreed to accept coverage subject to a complete reservation of Federal's rights under the Policy and at law, including the right to obtain a judicial declaration of those rights. *See id.* Because of Quality's status under the Policy's definition of "Financial Impairment," Federal has advanced defense costs without the $100,000 deductible that otherwise would have applied.

On February 2, 2005, Federal filed this adversary declaratory judgment action (No. 05-80071). Federal has named the directors and officers as Defendants and asks the Court to determine whether Federal's "Executive Protection Policy," in fact, obligates Federal to become a source of recovery for the entity that purchased the Policy.

## Argument

### I. DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED IF THERE IS ANY WAY THAT FEDERAL CAN PROVE ANY SET OF FACTS SUPPORTING ITS CLAIMS.

To determine whether to grant a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). The movant can prevail only if "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief." *Id.*

Under the law of Michigan (where the Policy was issued), insurance contracts are interpreted "much the same as any other contract." *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997). A court interprets the insurance contract in order to "best effectuate the intent of the parties and the clear, unambiguous language of the policy." *Id.* To do this, the court will consider the entire contract and give meaning "to all its terms." *Id.*

The court must interpret policy terms according to their ordinary and plain meanings and not "rewrite an insurance policy under the guise of interpretation." *McKusick v. Travelers Indem. Co.*, 632 N.W.2d 525, 531 (Mich. Ct. App. 2001). When interpreting a policy "the actual policy language remains the most important factor to be considered." *Id.* at 532. If the policy terms, including exclusionary provisions, are clear, the court should not read an ambiguity into the Policy. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999).

## II. THE COURT SHOULD DENY DEFENDANTS' DEMAND FOR A JUDGMENT THAT THE INSURED VS. INSURED EXCLUSION DOES NOT APPLY TO THE QUALITY ADVERSARY PROCEEDING.

### A. Federal Properly Alleges that the CLO's Proceeding is Brought or Maintained on Behalf of an Insured.

Subject to certain exceptions (including one discussed below), the Policy at issue here excludes coverage for actions "brought or maintained by or on behalf of any Insured." ELI Coverage, Endt. No. 11, ¶ 12 (amending ¶ 5(c)). The Quality Adversary expressly meets this description.

#### 1. Both the Plan and the Complaint *Say* that the Quality Adversary Is Brought on Behalf of the Quality Debtors.

In arguing that this provision should be held at the outset of the case *not* to apply, Defendants do not really dispute that the Quality Adversary Proceeding was brought on behalf of Quality. As the Joint Motion notes, the CLO is purporting to "'prosecute Rights of Action *on behalf of the* Debtors.'" R.35, at 7 (quoting Plan Art I.B.16; emphasis added). And the *Complaint* in the Quality Adversary Proceeding says the same thing. R.1 (Ex. B), ¶ 9.[2]

[2] Mr. Reinebach's Motion (R.32, at 4-8) argues that the Court's prior orders should be construed to find that Quality's CLO does not have the right to bring the Quality Adversary Proceedings against the former directors and officers. However, the remaining Defendants do not join in this argument, and it does not appear to be proper for resolution on a motion to dismiss. For purposes of determining Mr. Reinebach's Motion, this Court should consider only the allegations in Federal's Complaint and in the Quality Amended Complaint, not Mr. Reinebach's assertions of matters outside those complaints. In any event, although a challenge to the CLO's authority, if valid, might lead to dismissal of the litigation itself, it is irrelevant to coverage. The CLO alleges that it is asserting the claim on behalf of Quality and the claim the CLO asserts is Quality's claim of breach of duty to Quality. Accordingly, correctly or not, the action is being brought "on behalf of" Quality. *Cf. Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981) ("[t]he duty of the insurer to defend the insured depends upon the allegations in the complaint"); *cf. AT&T Corp v. Clarendon Am. Ins. Co.*, No. 04C-11-167 (JRJ), 2006 WL 1064172, at *20 (Del. Super. Ct. Apr. 13, 2006) (attached hereto as Exhibit D) ("[i]n cases involving policies with similar single claim provisions, prior notice and/or prior litigation exclusions, courts determine coverage based on the allegations in the underlying complaints and not the 'actual facts'").

### 2. This Policy Says the Insured Organization is an Insured Organization Whether It is a Debtor or Run By a Trustee or Otherwise.

Nor do the Defendants dispute the fact that in *this* Policy the "Insured Organization" is an "Insured Organization" even when the "Insured Organization become[s] a Debtor-in-Possession" or there has been a "receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization." *See* ELI Coverage, ¶¶ 18 and 19. Indeed, Defendants do not mention the provision.

### B. An Action "on Behalf of" an Insured Does Not Cease To Be "On Behalf of an Insured" When It is Pursued "On Behalf of an Insured for the Benefit of Creditors."

Instead of disputing either point, or quoting this Policy language concerning the Insured Organization, Defendants declare that "the Plan states that the Chief Litigation Officer is appointed by the creditors committee (not Quality) to 'prosecute Rights of Action **on behalf of** the Debtors *for the benefit of Holders of Unsecured Claims*.'" R.35, at 7 (italics Defendants'; bold added), and then Defendants add their own editorial parenthetical "(not for the benefit of Quality)." *Id.* From this, Defendants seem to argue that (1) an action expressly "on behalf of the Debtors" is, somehow, not on behalf of the Debtors when it is "for the benefit of Holders of Unsecured Claims," and (2) the parties bringing the Quality Adversary Proceeding therefore benefit from some type of dual status – enabling them to act on behalf of the Insured Organization, when it comes to *buying* the insurance but *not* when determining coverage. These arguments are incorrect for several reasons.

### 1. Defendants' argument contradicts what the Policy says.

*This* Policy does not exclude coverage based upon who is the ultimate beneficiary. It excludes coverage for all claims "by or on behalf of" the corporation without regard to who benefits. The Debtors cannot be Insureds when applying the deductible provisions and yet not be

Insureds when applying the exclusion. As common sense suggests, "the definition of 'insured person' must remain consistent throughout the contract in keeping with the policy of interpreting insurance contracts as a whole." *See Allstate Ins. Co. v. Tomaszewski*, 447 N.W.2d 849, 851 (Mich. Ct. App. 1989).

**2. The Sixth Circuit (in *Javitch*) has rejected Defendants' argument that a party can fairly be said not to act "on behalf of" an insolvent corporation when the party acts "for the benefit of" the corporation's creditors.**

In *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003), a receiver argued, as Defendants do here, that he escaped the result of bringing an action on behalf of the receivership estate (in that case, a contractual arbitration requirement) by asserting that he was "bringing . . . lawsuits on behalf of the 'true owners of the assets,'" the creditors. *Id.* at 625. The Sixth Circuit rejected the receiver's purported distinction:

> We are convinced, based on our assessment of both the claims being asserted by [the receiver] and the authority granted to him by the order appointing him as receiver, that . . . [the receiver] has asserted claims belonging to the receivership entities. This court explained, albeit in another context, that although the stated objective of a receivership may be to preserve the estate for the benefit of creditors, that does not equate to a grant of authority to pursue claims belonging to the creditors.

*Id.* at 627 (citation omitted).[3]

---

[3] *See also, e.g.*, *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 424 (1972) (finding that a trustee who had powers including those that "a receiver in equity would have if appointed by a court of the United States" could only assert claims belonging to the corporation and did not have standing to sue on behalf of third party creditors) (citation omitted); *Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1514-15 (1st Cir. 1987) (applying *Caplin* to receiver); *Scholes v. Lehmann*, 56 F.3d 750, 753-54 (7th Cir. 1995) ("an equity receiver may sue only to redress injuries to the entity in receivership...."), *cert. denied*, 516 U.S. 1028 (1995); *Hyde v. Fid. & Deposit Co.*, 23 F. Supp. 2d 630, 634 (D. Md. 1998); *Reliance Ins. Co. of Ill. v. Weis*, 148 B.R. 575, 583 (E.D. Mo. 1992), *aff'd in relevant part*, 5 F.3d 532 (8th Cir. 1993), *cert. denied*, 510 U.S. 1117 (1994); *Gary v. Am. Cas. Co.*, 753 F. Supp. 1547, 1555 (W.D. Okla. 1990) ("regardless of to whom the benefits of any recovery on a D&O policy by the FDIC or the FSLIC might directly or ultimately inure, their claims are claims of the financial institution which they acquired after failure of such financial institution . . . ."(footnote omitted)); *Nat'l Union Fire Ins. Co. v. Resolution Trust Corp.*, No. H-92-1157, 1992 WL 611463, at *3 (S.D.

Thus, under *Javitch*, the focus should be on whose rights are being asserted in the Quality Adversary Proceeding, not who ultimately will benefit from any recovery. And here, just as in *Javitch*, the authority given to and exercised by the CLO is to prosecute claims on behalf of the Debtors. Thus, the CLO stands in the shoes of Quality and acts on its behalf for purposes of the Insured vs. Insured Exclusion.

**3. Defendants have no fair basis for distinguishing *Javitch*.**

Defendants' only discussion of *Javitch* appears in a footnote. R.35, at 11 n.4. The footnote begins by implying that the Sixth Circuit's logic in its *2003 Javitch* decision was somehow "considered and rejected" by a bankruptcy court decision rendered three years earlier. *In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000). But defendants cannot mean this. Obviously, a later Sixth Circuit decision cannot be considered or rejected by an earlier lower court decision. *Buckeye* relied upon the premise, *later* rejected in *Javitch*, that the ostensible independence of a Chapter 7 trustee (*Buckeye*) or receiver (*Javitch*) meant that the trustee did not act "on behalf of the debtor." *Buckeye*, 251 B.R. at 840.

Accordingly, the only real basis Defendants suggest for distinguishing *Javitch* is that the specific issue in *Javitch* involved an obligation to arbitrate. Defendants urge that, were the issue anything besides an arbitration clause, the Sixth Circuit would have rejected its own logic to find that a receiver acts only on the rights of creditors and not "on behalf of" the corporation the receiver administers. R.35, at 11 n.4.

---

Tex. Aug. 12, 1992) (attached hereto as Exhibit E) (coverage precluded by an exclusion for claims brought on behalf of the insured company, "even though the benefits sought may eventually inure to [the benefit of the shareholders and creditors]"); *In re Light*, 23 B.R. 482, 484 (Bankr. E.D. Mich. 1982) (rejecting argument that a policy exclusion did not apply to the debtor in possession because the policy proceeds would go to the debtor's creditors).

This "only arbitration" reading, however, is contrary to *Javitch* itself. *Javitch* did not purport to create a *special* rule *for* arbitration cases. It applied a *general* rule *to* arbitration cases. As the Court explained:

> The *general* rule is that a receiver acquires no greater rights in property than the debtor had and that, except as to liens in existence at the time of the appointment, the receiver holds the property for the benefit of general creditors under the direction of the court. *In re K-T Sandwich Shoppe of Akron*, 34 F.2d 962, 963 (6th Cir. 1929). Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action. *See, e.g., Goodman v. FCC*, 182 F.3d 987, 991-92 (D.C. Cir. 1999) (receiver did not have standing to sue on behalf of customers and creditors of entity in receivership); *Scholes v. Lehmann*, 56 F.3d 750, 753-55 (7th Cir. 1995) (receiver for corporation could sue for diversion of assets as fraudulent conveyances by controlling shareholder).

*Id.* at 625 (emphasis added). As the Court went on to explain, it was, in "*[a]pplying this general rule*," that "the court in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153-54 (3d Cir. 1989), concluded that arbitration agreements, *like other prepetition contractual commitments*, were binding on the bankruptcy trustee to the same extent that they would bind the debtor." *Javitch*, 315 F.3d at 625 (emphasis added).

**4. Defendants' assertion that the CLO acts for the benefit of creditors does not change the fact that the CLO has acted "on behalf of" Quality.**

As *Javitch* reflects, corporations are creations of law. "Unlike an individual," corporations always "act[] on behalf of others." *Fausek v. White*, 965 F.2d 126, 132 (6th Cir. 1992). Corporate management usually acts on the corporation's behalf for the benefit of shareholders. Under Delaware law, when a corporation enters the "zone of insolvency," its management acts on the corporation's behalf for the benefit of creditors. *See Production Resources Group L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790-91 (Del. Ch. 2004) ("[w]hen a firm has reached the point of insolvency, ... the firm's directors are said to owe fiduciary duties

to the company's creditors"). And this fact is true *regardless* of whether a corporation is in bankruptcy or receivership.

**5. Defendants' argument would not be correct – even if it were not contrary to *Javitch* and the language of this Policy, the Plan and the Complaint.**

Defendants rely on bankruptcy court cases, primarily the pre-*Javitch* decision in *Buckeye Countrymark*, for the proposition that a bankruptcy trustee (in that case a *Chapter 7 Trustee*) is a separate legal entity that need not be said to act on behalf of the Debtor. This premise is strained. It requires placing a Chapter 7 Trustee in a kind of dual role – the representative of the insured for purposes of purchasing the policy, but not one when it comes to applying the policy's terms. This duality has been rejected by numerous other decisions – including the appellate authority on the point – that Defendants do not cite.[4]

---

[4] *See, e.g., Nat'l Union Fire Ins. Co. v. Olympia Holding Corp.*, No. 1:94-CV-2081-GET, 1996 WL 33415761, at *7 (N.D. Ga. June 4, 1996) (attached hereto as Exhibit F) (the "bankruptcy trustee stands in the shoes of the debtor corporation in prosecuting a cause of action belonging to the debtor" and, thus, "there is no legal distinction between [the insured and trustee], as Trustee for the bankruptcy estate"), *aff'd per curiam*, 148 F.3d 1070 (11th Cir. 1998); *Reliance Ins. Co. of Ill. v. Weis*, 148 B.R. 575, 583 (E.D. Mo. 1992) ("whatever right of action [the insured] had against its former officers for mismanagement and breach of duty was transferred to the bankruptcy estate upon the filing of its bankruptcy petition" and, therefore, "there is no significant legal distinction between [the insured] and its bankruptcy estate), *aff'd in relevant part*, 5 F.3d 532 (8th Cir. 1993), *cert. denied*, 510 U.S. 1117 (1994). *See also In re R.J. Reynolds – Patrick County Memorial Hospital, Inc.*, 315 B.R. 674, 678 (Bankr. W.D. Va. 2003) (to "trigger the [insured vs. insured] exception ... the determining factor is that the Trustee steps into the shoes of the Debtor by virtue of a voluntary affirmative act of the Debtor, not by the involuntary appointment of a chapter 11 trustee"); *Fid. & Deposit Co. v. Conner*, 973 F.2d 1236, 1245 (5th Cir. 1992) ("a number of courts have recognized that, when both are suing the bank's officers and directors, an insured bank and its receiver share equivalent status under an insured vs. insured exclusion"); *Powell v. Am. Cas. Co.*, 772 F. Supp. 1188, 1191 (W.D. Okla. 1991) (finding the Insured versus Insured exclusion is not against public policy and it applies to actions brought by the FDIC, "which stands in the shoes of the [insured company] in prosecuting claims"); *Gary v. Am. Cas. Co.*, 753 F. Supp. 1547, 1554 (W.D. Okla. 1990) ("claims would not be covered under the policy if asserted by [the bank]; it is difficult to argue that they should be covered when asserted on behalf of [the bank] by its receiver"); *Mt. Hawley Ins. Co. v. Fed. Sav. & Loan Ins. Corp.*, 695 F. Supp. 469, 481-82 (C.D. Cal. 1987) (finding the "receiver . . .

But even if Chapter 7 Trustees had this dual role, it would not matter here. Here, the Policy language expressly contemplates that an insured remains an insured even when it is controlled by a trustee. And both the Plan and the Quality Adversary Complaint contradict Defendants' argument.

In all events, even if *Buckeye Countrymark* were the controlling authority, and the Policy, the Plan and the Complaint had no such language, Defendants' argument that a Chapter 7 trustee does not act on behalf of an insured *still* would fail to prove Defendants' point. The Quality Adversary Proceeding was not brought by a Chapter 7 trustee. It was brought by an officer of the *reorganized* Debtors.

Nothing in the conclusion that Chapter 7 trustees have a special role *in* bankruptcy suggests the conclusion that a *reorganized Debtor* obtains the ability afterwards to call itself an "insured" for purposes of purchasing an extended reporting period and determining the deductible under a policy but "not an insured" for purposes of a policy exclusion. To the contrary, under the Bankruptcy Code, "a debtor's rights may not be expanded beyond what they were at the commencement of the case." *In re Graham Square, Inc.*, 126 F.3d 823, 831 (6th Cir. 1997). And the Policy reinforces this conclusion: "Bankruptcy or insolvency of an **Insured** or of the estate of an **Insured** shall not relieve [Federal] of its obligations nor deprive [Federal] of its rights" under the Policy. ELI Coverage, General Terms and Conditions ¶ 8. *See also R.J. Reynolds*, 315 B.R. at 678-82 (distinguishing the situation with a chapter 7 trustee, and holding

becomes [for] all intents and purposes the bank – at least he stands in the place of the bank") (citation omitted).

that insured vs. insured exclusion applies to a trustee who received rights by virtue of assignment under a chapter 11 plan).[5]

**6. The Insured vs. Insured Exclusion applies for the additional reason that the CLO is an officer of the company.**

The Policy defines an Insured Person as "any person who has been, now is, or shall become … a duly elected or appointed officer of" Quality. *See* ELI Coverage, Declarations Item 6. In order to be "duly elected or appointed," an individual's election or appointment must occur through proper procedures. *See Sphinx Int'l v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1228 (11th Cir. 2005). The bankruptcy court has the right to order the appointment of an officer of a debtor-in-possession. *See In re Gaslight Club, Inc.*, 782 F.2d 767, 770-71 (7th Cir. 1986) ("the [bankruptcy] court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests," including the appointment of a responsible officer). Here, the CLO was "duly" appointed pursuant to the Debtors' Plan as an officer of the Debtors and is an Insured within the plain meaning of the exclusion.

The Defendants apart from Mr. Reinebach argue that the CLO is not a duly appointed officer of Quality because the Creditors' Committee appointed the CLO to act on their behalf. R.35, at 10. Defendant Reinebach asserts that the CLO cannot be an Insured Person under the Policy because he was appointed after the cutoff date for covered Wrongful Acts. R.32, at ¶ 51. The Policy, however, does not talk about *who* chooses the CLO or when the Wrongful Acts

[5] Mr. Reinebach suggests (R.32, at 8) that the Court's approval to purchase the tail coverage means that the insurance would cover whatever lawsuit the CLO eventually decided to bring. The Court's decision authorizing the purchase, however, does not purport to make such an advance coverage determination; and even the Debtors themselves recognized that coverage "may" increase the estate's recovery but was not a certainty. *See* No. 01-10662, R.1180, at ¶ 11. In any event, such a determination could not bind Federal, which was not a party to the motion or bankruptcy proceedings. *See Howell v. Vito's Trucking & Excavating Co.*, 191 N.W.2d 313, 315 (Mich. 1971) (under the privity requirement of *res judicata* "only parties to the former judgment … may take advantage of or be bound by it").

occurred; it talks about whether the officer was duly appointed. And so the CLO was. *See* R.1 (Ex. C), Plan, Art. VIII(B).

### C. Defendants' Are Not Entitled – Especially on a Motion To Dismiss – To Limit the Insured vs. Insured Exclusion Beyond Its Text to "Non-Collusive Lawsuits."

Defendants also assert that applying the Insured vs. Insured Exclusion as written would be "inconsistent" with what Defendants say is "the purpose of the exclusion – the prevention of collusion among insureds." R.35, at 13. This argument, too, errs in several respects.

#### 1. Assertions about the non-textual intent of a policy do not overrule its language.

Where an exclusion clearly and unambiguously precludes coverage, there is no need to "speculate about the intent of the insurance industry" with regard to the exclusion at issue. *McKusick*, 632 N.W.2d at 532. In *Sphinx,* 412 F.3d at 1229, for example, the Eleventh Circuit recognized that "the [insured vs. insured] exclusion's rationale does not trump its text." Similarly, in *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956, 958-59 (7th Cir. 1999), the Seventh Circuit concluded that, even if the purpose of the exclusion were to exclude collusive lawsuits, the point of using language like "on behalf of" is to establish a "rule barring coverage when an insured is suing another insured" and not the "standard that would require the district court to inquire into the collusive potential of the securities suit or the bitterness of the feelings between [parties] in that suit." *Cf. Stratton v. Nat'l Union Fire. Ins. Co.,* No. 03-CV-12018-RGS, 2004 U.S. Dist. LEXIS 17613, at *19 (D. Mass. Sept. 3, 2004) (attached hereto as Exhibit G) (disregarding argument that lawsuit by successor corporation to insured was not collusive because "it founders on the rule of contract interpretation that precludes a court from looking to extrinsic evidence to contradict and defeat the meaning of plain language in a contract").

**2. Defendants' assertion about the Intent of the Insured vs. Insured Exclusion is not correct.**

Although Defendants (and some courts) assume that the intent of the Insured vs. Insured Exclusion is merely to avoid "collusive" lawsuits, it is not actually true. In *Hyde v. Fidelity & Deposit Co.*, 23 F. Supp. 2d 630 (D. Md. 1998), for example, the court applied an exclusion for lawsuits brought "by or on behalf of" the insured bank to an action pursued by the Resolution Trust Corporation as receiver for the bank. In considering the insured's "collusion" argument, the *Hyde* decision noted that (1) courts had split over whether an exclusion that applied only to actions "by" an entity barred coverage for a lawsuit by a regulatory agency that had taken over a financial institution; (2) there was no coverage where, as there, "the Policy under consideration specifically excluded coverage for cases 'on behalf of' the Bank, and not just 'by' the Bank." *Id.* at 634. As *Hyde* explained, a contrary finding would frustrate the purpose of the exclusion because "these claims would not be covered under the policy if asserted by [the insured]" and, therefore, "it is difficult to argue that they should be covered when asserted on behalf of [the insured] by its receiver." *Id.* (citation omitted).

**3. Even if the Insured vs. Insured Exclusion were limited to "collusive" lawsuits, the Quality Adversary Proceeding *is* "collusive" in the common sense of the term.**

Quality bought liability insurance with the hope and expectation of recovering the proceeds for *its own benefit*. As the court explained in *Hyde*, there is no sensible way to reconcile that goal with this insurance:

> It is difficult to argue that it is within the reasonable expectations of the parties to [a directors and officers liability] contract that the corporation was paying D&O insurance premiums to protect the directors and officers from the consequences of breaching their duty to the corporation. If coverage for claims made by the corporation against the officers and directors does not fall within the scope of the 'insured's reasonable expectation of coverage,' there is no reason for the insureds to suppose that these same claims would be covered if brought by the receiver for the corporation.

23 F. Supp. 3d at 634 (*quoting Mt. Hawley Ins. Co. v. Federal Savings & Loan Ins. Corp.*, 695 F. Supp. 469, 484 (C.D. Cal. 1987)). This is liability insurance, not a surety bond.

**4. In any event, Defendants are not entitled on a motion to dismiss to have their view of this exclusion's purpose treated as if it were a fact.**

Nor can defendants so presume *on a motion to dismiss*. Defendants offer no evidence of the alleged purpose of the Insured vs. Insured Exclusion and, on their motion, they are not allowed to present any. *See Branch Int'l Servs., Inc. v. Budde*, 890 F. Supp. 659, 661-62 (E.D. Mich. 1995) (when determining a motion to dismiss, "the court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief"), *aff'd*, 89 F.3d 832 (6th Cir. 1996). That is what discovery and proof are for.

If this case actually were to turn on the "intent" of the Insured vs. Insured Exclusion, Federal would submit evidence to demonstrate that the words "on behalf of" are intended to apply as they are written. As this case illustrates, an insurer faces a much greater potential for exposure in a situation where the insured organization is controlled by the *plaintiffs* in the lawsuit, not the defendants. In a normal case, the insurer's obligation to pay is conditioned on the insured organization complying with its duty to *cooperate* with the insurer to minimize the exposure. *See In re Pettibone Corp.*, 156 B.R. 220, 233 (Bankr. N.D. Ill. 1993) (even in cases where the insured is a nominal defendant, the "obligation to cooperate with the insurer is always present"), *aff'd sub nom*, *Pettibone Corp. v. Hawxhurst,* 163 B.R. 989 (N.D. Ill. 1994), *aff'd*, 40 F.3d 175 (7th Cir. 1994); Policy ELI Coverage ¶ 11 ("[t]he **Insureds**" including Quality "agree to provide [Federal] with all information, assistance and cooperation [Federal] reasonably requests and agree that in the event of a **Claim** the **Insureds** will do nothing that may prejudice [Federal's] position or its potential or actual rights of recovery").

This case is nothing like the "normal" one. Here, for example, the CLO controls access to all documents; asserts the power to waive privileges; seeks to establish the directors and officers' liability not to defend them; and, of course, is not "cooperating" to minimize exposure. An insurer concerned with obtaining the cooperation of the insureds on *its* side cannot be presumed to be oblivious to the much greater risk posed by having insureds on *the opposite* side.

**D. The Quality Adversary Proceeding is Not a Derivative Suit Being Pursued by Non-Insured Persons "Without the Solicitation, Assistance, or Participation of any Insured."**

Defendants also argue that the Insured vs. Insured Exclusion does not apply because of the exception for "a Claim that is a derivative action brought or maintained on behalf of an Insured Organization *by one or more persons who are not Insured Persons and who bring and maintain the Claim without the solicitation, assistance, or participation of any Insured.*" *See* ELI Coverage, ¶5(c) (emphasis added), cited in R.35, at 14 and R.32, at 10. It is not clear whether Defendants believe that the Quality Adversary Proceeding really is a derivative suit brought or maintained "without the solicitation, assistance, or participation of any Insured," or instead are merely urging that the specific exception connotes a categorical exception for all non-collusive suits. Either way, the argument is incorrect.

**1. The Quality Adversary Proceeding meets neither condition of this exception.**

As noted above, the Quality Adversary Proceeding is being brought by an Insured Person (the CLO) in the name of and on behalf of the Insured Organization, Quality and its subsidiaries. Accordingly, it is *not* being brought or maintained by a non-Insured.

Nor is the lawsuit being brought "without the solicitation, assistance or participation of any Insured." In *R.J. Reynolds*, for example, the court rejected the same argument advanced in connection with a trustee's suit against a corporation's officers and directors, where the

corporation's rights to sue directors and officers had been assigned to the trustee under the chapter 11 plan proposed by a debtor-in-possession and approved by the court. The trustee argued, as Defendants do here, that his lawsuit was really a derivative claim on behalf of the creditors. The court found that the same exclusion at issue here barred coverage. The court reasoned that (regardless of whether the trustee obtained the power to sue by assignment from the debtor, or as a creditors' representative), the lawsuit cannot be said to be pursued without the "solicitation, assistance or participation of" an Insured, when the debtor set up the suit:

> The Debtor drafted the Plan. The Debtor provided through the Plan for the creation of the Trust and for the appointment of the Trustee. By creating a legal entity to sue on behalf of the creditors, the Debtor solicited the action against [the directors and officers]. By voluntarily assigning the claims to the Trust, the Debtor assisted in the prosecution of the claims against [the directors and officers]. It follows that the Trustee now brings the action against [the directors and officers] only with the solicitation, assistance, or participation of the Debtor.

350 B.R. at 682.[6]

Indeed, the circumstances here are even clearer than those at issue in *R.J. Reynolds*. Here, the Quality Adversary Proceeding was not brought *by* a creditor or a creditors' committee, or for that matter a trustee. Under the Quality Plan, the CLO acts on behalf of the Debtors and has the "exclusive right ... to commence, pursue, and settle [the Debtors'] Rights of Action." *See* R.1 (Ex. C), Plan, Art. IX(A). Thus, the CLO is authorized only to enforce the Debtors' rights, not the rights of creditors. Defendants' argument seems to imply that, when a firm is insolvent, any fiduciary claims are derivative, regardless of who brings them. But the Delaware

[6] The two Delaware cases cited in Defendants' Joint Motion, *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004), and *Cirka v. National Union Fire Insurance*, No. Civ. A.20250-NC, 2004 WL 1813283 (Del. Ch. Aug. 6, 2004) (attached hereto as Exhibit H, do not affect this logic. These cases merely stand for the proposition that an action that would have been derivative when brought by a shareholder is likewise derivative when brought by a creditor or on behalf of creditors. They do not show that the case was pursued without the "solicitation, assistance, or participation of the Debtor."

Chancery Court refused to adopt that proposition in *NCT*, 863 A.2d at 796-97. Here, the fiduciary claim at issue belongs to Quality and is being brought by the CLO *for* Quality, not the creditors.

**2. The fact that the exclusion contains an exception that the Quality Adversary Proceeding does not meet further undercuts Defendants' arguments.**

The existence of an exception (into which this case does not fall), undercuts, rather than supports, Defendants' assertion that the entire exclusion is supposed to be limited to non-collusive lawsuits. If, as Defendants urge, the Insured vs. Insured Exclusion were limited categorically to non-collusive lawsuits, there would be no need for this exception. Defendants' reading violates a common sense rule of construction by making the exception into surplusage. When interpreting a contract, it is important to try to give meaning to every clause or word of a contract. *See Harrington*, *supra*, 565 N.W.2d at 841 (a court must consider all of the terms in a policy to effectuate its intent).

For all these reasons, Defendants' arguments that the Complaint fails to state a claim based upon the Insured vs. Insured Exclusion should be rejected.

## III. THE QUALITY ADVERSARY PROCEEDING IS ALSO EXCLUDED FROM COVERAGE BY THE SALE EXCLUSION.

Federal's Complaint asserts that the Quality Adversary Proceeding is "based upon, arising from, or in consequence of a public or private offering, solicitation, sale, or distribution or issuance of securities, whether or not a prospectus has been issued," and thus excluded by the Sale Exclusion. *See* R.1 (Ex. A), ELI Coverage, Endt. No. 1, ¶ 5(g). Defendants are not entitled to dismiss this claim.

### A. The Sale Exclusion Applies Broadly to Claims "Based upon, Arising from, or in Consequence of" a Sale of Securities.

As the words "based upon, arising from, or in consequence of" suggest, the Sale Exclusion is not limited to lawsuits challenging a sale of securities, such as the May 1999 leveraged buyout ("LBO") forming Quality. It applies to lawsuits that, in specified ways, *relate* to a sale. The type of relationship is, by and large, causal. The Michigan Court of Appeals held in *McKusick* that the phrase "arose out of" refers to "a causal connection that is more than incidental, fortuitous or remote" between an event and a subsequent claim. 632 N.W.2d at 532. The terms "based upon" and "in consequence of" also mean what they say and refer to the existence of a causal connection between a claim and an exclusionary event. *See Ameriwood Indus. Int'l Corp. v. Am. Cas. Co. of Reading, Pa.*, 840 F. Supp. 1143, 1152 (W.D. Mich. 1993) (where a second amended complaint made allegations similar to those in the original lawsuit, coverage was precluded under a prior or pending litigation exclusion because the complaint was "based upon" the original lawsuit); *Olson v. Am. Bankers Ins. Co.*, 35 Cal. Rptr. 2d 897, 904 (Cal. Ct. App. 1994) (the term "in consequence of" speaks to the existence of some "causal connection").

Generally, courts have interpreted exclusions employing these terms broadly. For example, in *Danis v. Great American Insurance Co.*, 823 N.E.2d 59 (Ohio Ct. App. 2004), *appeal denied*, 824 N.E.2d 541 (Ohio 2005), the court construed an exclusion for any loss "based upon, arising out of, relating to, directly or indirectly resulting from, in consequence of, or in any way involving … pollution." *Id.* at 66. In *Danis*, the court found that the Sixth Circuit's interpretation of Ohio law in the *Owens Corning* case cited by Defendants was too narrow, and held that a pollution exclusion precluded coverage for both pollution and tort claims against the insured's directors and officers because the tort claims were causally connected to the pollution.

**B. The Quality Adversary Proceeding Says that It Is Based Upon, Arises From and Is in Consequence of Quality's LBO.**

Here, Federal's Complaint properly alleges a causal connection between the underlying breach of fiduciary duty claim against Defendants and the LBO. The fundamental assertion in the Quality Adversary Proceeding is that Defendants failed to adopt a business approach that would permit Quality to survive post-merger after the LBO allegedly left it insolvent. R. 1 (Ex. B), ¶ 2. The Quality Amended Complaint alleges that:

> Quality Stores' demise was the direct result of financial difficulties that arose for two primary reasons: (i) the Company was insolvent, had been left with unreasonably small capital and had incurred debts beyond its ability to pay *as a result of the leveraged buyout*, and (ii) the defendants, who were officers and directors of Quality Stores between 1999 and 2001, made a series of grossly negligent decisions in acting, and were negligent or grossly negligent in failing to act – *all of which caused severe cash flow problems for Quality Stores and destroyed any chance the Company had of surviving post-merger.*

*Id.* ¶ 3 (emphasis added).

The Quality Amended Complaint also alleges that Defendants failed to create and to adopt "a business model that could support the substantial debt service incurred *in connection with the Quality LBO*," *id.* ¶ 52; "either ignored or failed to adequately inform themselves about the problems and additional expenses arising *as a result of the integration* of [the merged companies] into a single ... company," *id.* ¶ 53; "failed to take any steps to protect interests of Quality Stores and its creditors" even though they were aware of "the precarious financial position that Quality Stores was in *after the ... LBO*," *id.* ¶ 61; and failed to "integrate the computer systems of the merged companies into a properly functioning computer system," resulting in an inventory over-buy. *Id.* ¶ 67 (emphasis added).

### C. Applying the Sale Exclusion as It Is Written Does Not Render Coverage Illusory.

As with the Insured vs. Insured Exclusion, Defendants employ an "extra-textual intent" argument to narrow the Sale Exclusion. Defendants argue that, if the Court applies the Sale Exclusion as it is written, it will in some way render coverage illusory. R.35, at 17. This too is mistaken, both on the law (discussed at 17-18 above), and the facts.

Federal is not arguing that the Policy excludes coverage for *any* claim that follows after an LBO. Federal is arguing that *this* Claim (the Quality Adversary Proceeding) *says* it is based upon the LBO. This does not make coverage illusory. *See e.g., AT&T Corp v. Clarendon Am. Ins. Co.*, No. 04C-11-167JRJ, 2006 WL 1064172 at *15 (Del. Super. Ct. Apr. 13, 2006) (Ex. D) (rejecting the same "illusory coverage" argument in case involving a prior notice exclusion); *Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 499 (1st Cir. 2005) (the second complaint is "based upon" the first complaint where the first complaint is a "foundation or logical basis for the second"); *Employers Ins. of Wausau v. Duplan Corp.,* 899 F. Supp 1112, 1129 (S.D.N.Y. 1995) (a fiduciary duty claim that "owe[d] its very existence to [a] pollution damage claim" was "based upon, arising from, or in consequence of" the pollution claim); *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.*, 25 F.3d 332, 337 (6th Cir. 1994) (where the complaint specifically alleged that trademark infringement caused advertising injuries, the alleged injuries were "arising out of infringement of trademark").

It also makes no difference for the purpose of the Sales Exclusion whether all of the Defendants were directors or officers at the time of the LBO. *See* R.35, at 18. The exclusion is not limited to a specific time, but rather precludes coverage for any claim "based upon, arising from, or in consequence of" the LBO. For these reasons, Defendants are incorrect that the

relationship between the LBO and the claims in the Quality Adversary Proceeding are insufficient as a matter of law to trigger the Sales Exclusion.

## IV. DEFENDANTS ARE NOT ENTITLED TO AN ADVANCE RULING THAT NO PROVISIONS OF THE POLICY BAR COVERAGE OR THAT DEFENSE COSTS ARE COVERED.

Federal's Third Cause of Action asserts that, in the event Federal succeeds, it is entitled to seek reimbursement of defense costs. Federal's Fourth Cause of Action notes that even if the Insured vs. Insured Exclusion and the Sale Exclusion do not operate to preclude coverage for the Quality Adversary Proceeding, coverage may be precluded, in whole or in part, by other Policy provisions. In seeking to dismiss these Counts, Defendants do not disagree with either of these propositions *per se*. Instead, they argue that, if the Court adopts their arguments on the two other exclusions, the Court should dismiss these counts as well – apparently with prejudice – as if there would have to be coverage for the Quality Adversary Proceeding as a matter of law. The Court should reject these arguments, both because Defendants should not prevail on their other arguments, and because there would be no reason to dismiss these claims if they did.

## Conclusion

For these reasons, Federal respectfully requests that the Court deny Defendants' motions to dismiss.

Dated: May 5, 2006

Respectfully submitted,

/s/ *Edith A. Landman*
Edith A. Landman (P29409)
PLUNKETT & COONEY, P.C.
Bridgewater Place
333 Bridge N.W., Suite 530
Grand Rapids, Michigan 49504
(616) 752-4600 (phone)
(616) 752-4607 (facsimile)

*Of Counsel:*

Merril Hirsh, admitted *pro hac vice*
Gabriela Richeimer, admitted *pro hac vice*
ROSS, DIXON & BELL, LLP
2001 K Street, N.W., Suite 400
Washington, D.C. 20006-1040
(202) 662-2000 (phone)
(202) 662-2190 (facsimile)

*Counsel for Plaintiff Federal Insurance Company*